IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SWANSON, | No   C 06-2532 VRW |
| Petitioner, | |
| v | ORDER |
| DEE ADAMS, in his capacity as Warden of the Corcoran State Prison, | |
| Respondent. | |

On March 26, 2003, after a court trial, petitioner was found guilty in the Superior Court of the State of California in and for the County of Santa Clara of lewd or lascivious acts on a child under fourteen, lewd or lascivious acts on a child age fourteen or fifteen, oral copulation with a minor, annoying or molesting a child and contributing to the delinquency of a minor. On June 12, 2003, the court sentenced petitioner to a term of fifteen years, eight months.

On October 18, 2004, the California Court of Appeal, Sixth Appellate District affirmed the judgment and, on January 12,

2005, the California Supreme Court denied review. Resp't Ex 11, 13; Doc # 13. On April 10, 2006, petitioner filed a petition for a writ of habeas corpus in the California Supreme Court, raising unexhausted claims. Ex 14, Doc # 13. On April 11, 2006, petitioner filed a federal petition for a writ of habeas corpus under 28 USC § 2254 and a concurrent application to hold the petition in abeyance while petitioner litigated unexhausted claims in state court. Doc ## 1, 2. The court granted the abeyance petition and on November 29, 2006, the California Supreme Court denied the petition pending before it. Ex 15; Doc ## 3, 13. Petitioner then filed the instant amended federal petition. Doc # 4.

Per order filed on January 30, 2007, the court found that the petition, liberally construed, stated cognizable claims under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Doc # 8. Respondent filed an answer on May 30, 2007 and petitioner submitted a traverse on July 26, 2007. Doc ## 11, 17.

I

The court of appeal summarized the facts of the case as follows:

> Defendant was a longtime friend and neighbor of Andy M * * * [who] was confined to bed and required a great deal of personal care. Defendant, along with many of Andy's family members, took turns taking care of Andy. Andy's nephew, victim 1, began taking an interest in his uncle's care in early 1995, toward the end of victim 1's seventh grade year, when victim 1 was 12 years old. Defendant was 25 years old at that time, 13 years older than victim 1.

\\

2

Victim 1 testified that one day soon after he had begun caring for Andy, he and defendant watched a pornographic movie while seated next to each other in Andy's room. Andy was present but he was on a ventilator and slept most of the time. While defendant and victim 1 watched the movie they each masturbated themselves. Then, on his own initiative, victim 1 masturbated defendant and defendant reciprocated. Similar conduct occurred two or three times before the end of victim 1's seventh grade year and continued into the summer. Defendant had wanted victim 1 to perform oral sex but victim 1 refused. The reciprocal masturbation almost always involved pornographic movies and often included the use of alcohol or marijuana. Defendant told victim 1 that defendant could get into a lot of trouble for what they were doing.

At the beginning of victim 1's eighth grade year, he and defendant began performing oral sex on each other as well as masturbating each other. Victim 1 explained that defendant had asked him repeatedly to have oral sex and that victim 1 finally gave in. The two had sexual contact about one to two times per month during victim 1's eighth grade year. The oral sex occurred on five or six occasions during the school year and three or four times during the following summer. During victim 1's first year in high school in 1996, he and defendant had weekly sexual encounters involving either mutual masturbation or oral sex. The same activity continued with gradually decreasing frequency until victim 1 graduated. There were only one or two instances that occurred after graduation. Victim 1 turned 18 on July 22, 2000, after he had graduated from high school.

After victim 1 graduated from high school he began an intimate relationship with another man and told defendant he no longer wanted to engage in sexual acts with him. In spite of this, defendant made at least two unwanted sexual advances toward victim 1, grabbing his buttocks and crotch. The last such incident occurred on February 14, 2002, when victim 1 was 19 years old. Victim 1 reported these incidents to the police on February 15, 2002. In the course of reporting defendant's most recent conduct, victim 1 also revealed their sexual history, going back to their first sexual contacts when victim 1 was 12 years old.

Victim 2 was victim 1's younger brother. He began caring for Andy around 1998, when victim 2 was about 14 years old. Victim 1 was then about 16 years old and had become less involved in Andy's care. At trial victim 2 denied that he had had any sexual contact with defendant and denied that defendant had ever masturbated in his presence. However, during the investigation that followed victim 1's report to the police, victim 2 described defendant as the type of uncle who let him

3

"drink beer and watch pornos" on "numerous" occasions. He also said that defendant would masturbate in his presence while watching pornographic movies in Andy's room. He reported that beer drinking and pornographic movie watching occurred about 15 times during the preceding year (February 2001-February 2002) when victim 2 was 16 to 17 years of age and that about two-thirds of the time defendant masturbated himself while watching the movies.

When the police interviewed defendant, he admitted having engaged in mutual masturbation with victim 1 beginning when victim 1 was about 14 or 15 years old. When asked how many times this conduct took place, defendant stated "I don't know if it was every Saturday night, or every Friday night, or, or once a month. I, just whenever I was asked to go over there by [victim 1]." Defendant explained that victim 1 "suggested it a lot." The interviewer asked him if it was more than once or less than a hundred and defendant responded, "More than, less than, I would say, thirty." Defendant explained that the conduct often took place at Andy's house, although some occurred at defendant's home. The conduct usually included alcohol and pornographic movies.

Defendant said that when victim 1 was about 15 and a half or 16 years old defendant stopped going to Andy's house regularly and only went there when Andy called him to come over. Defendant stopped his regular visits because Andy had a nurse, Joe, who began taking Andy and victim 1 on excursions. They would go to the movies or to San Francisco to "peep booth shows, and, and all that stuff." Defendant felt hurt and betrayed. He saw victim 1 very little during this time, only at family gatherings. He began coming around to Andy's again after the nurse left, about the time of victim 1's 18th birthday. Defendant confirmed that after high school, victim 1 began having intimate relationships with other men, which took him away from defendant. This caused defendant to miss victim 1. He said he loved victim 1. "I mean, not as in lovers, but as in ... [] ... [] Love the guy, okay?"

When asked if he ever had oral sex with victim 1 defendant responded, "Yeah, after he was 18." Defendant said victim 1 had initiated the oral sex. He explained that he and victim 1 engaged in mutual oral sex three or four times before victim 1 told him he did not want to do it anymore.

**People v Swanson**, No H026109, slip op at 2-4 (Cal Ct App Oct 18, 2004) (Ex 11, Doc # 13).

\\

**4**

**II**

**A**

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 USC § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v Taylor, 529 US 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was

5

"objectively unreasonable." Id at 409.

The only definitive source of clearly established federal law under 28 USC § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id at 412; <u>Clark v Murphy</u>, 331 F3d 1062, 1069 (9th Cir 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

B

Petitioner raises three claims for relief: (1) the trial court's application of California Penal Code section 803(g) violated the <u>Ex Post Facto</u> Clause of the United States Constitution; (2) the trial court violated petitioner's due process rights by admitting petitioner's statement to police, which petitioner argues was obtained in violation of <u>Miranda v Arizona</u>, 384 US 436 (1966); and (3) the trial court violated petitioner's right to a jury trial by imposing consecutive terms based on factual findings made by the court and not the jury.

1

Petitioner's first argument, based on <u>Stogner v California</u>, 539 US 607 (2003), is that California Penal Code section 803(g)—a 1993 enactment which extended the statute of limitations for certain sex crimes to one year from the date the crime was reported to a California law enforcement

agency—unconstitutionally revives a cause of action that could not otherwise have been prosecuted.

In Stogner, the defendant was indicted in 1998 for sex-related child abuse committed between 1995 and 1973. 539 US at 609. Without then-new California Penal Code section 803(g), California could not have prosecuted Stogner, as the statutes of limitations on his alleged crimes had long since run. Id at 609-610. The Supreme Court held that, "a law enacted after expiration of a previously applicable limitations period violates the Ex Post Facto Clause when it is applied to revive a previously time-barred prosecution." Id at 632-33. Accordingly, the Supreme Court invalidated Stogner's indictment. Id at 633.

Here, in rejecting petitioner's Stogner-based argument, the court of appeal stated:

> Stogner distinguished between statutes that extend the statute of limitations, and those that attempt to revive them. "Even where courts have upheld extensions of unexpired statutes of limitations * * *, they have consistently distinguished situations where limitations periods have expired." * * * In the present case, defendant was charged with crimes committed as far back as January 1, 1995. Section 803(g) became effective on January 1, 1994 * * *, a full year before defendant is alleged to have committed the first of the crimes charged. Defendant's risk of prosecution for the crimes was never unfairly revived because the enactment of section 803(g) before he committed the crimes put him on notice that he was subject to prosecution within a year of when his victims reported the molestation. In this case, unlike Stogner's, section 803(g) operates only as an extension of the statute of limitations for the crimes charged and is constitutional as applied to defendant.

People v Swanson, slip op at 14, Doc # 13.

The court of appeal's holding comports with the Ninth Circuit's opinion in Renderos v Ryan, 469 F3d 788 (9th Cir 2006), in which the court rejected the petitioner's Stogner-based argument

7

that § 803(g) violated the Ex Post Facto Clause by impermissibly reviving the limitations period. Id at 793. The court distinguished the Stogner case on the basis that, in Stogner, "the amendment in question became effective after the statute of limitations had already expired," whereas in Renderos's case § 803(g) was enacted while the limitations periods were still running. Id at 794-95. The Ninth Circuit also stated that the application of § 803(g) to Renderos did not work "manifest injustice" because there was no retroactive effect, as the original limitations period had not yet expired. Id at 795. Renderos also could not claim prejudice because he had notice and fair warning that he could still be prosecuted under § 803(g), even though the shorter limitation periods would soon expire. Id at 795-96.

For the reasons set forth in Renderos, the court of appeal did not misapply clearly established Supreme Court precedent in rejecting petitioner's challenge to § 803(g), nor did its decision involve an unreasonable determination of the facts. 28 USC § 2254(d).

2

Petitioner next claims that admission at trial of his confession violated his Miranda rights. Petitioner argues that he had never been arrested before and he had no experience in the criminal justice system and that the police did not explicitly ask him whether he waived his Miranda rights. Thus, petitioner argues, the totality of the circumstances shows that he did not waive his Miranda rights. Petitioner did not raise this argument at the state appellate level, but he did make Miranda-based objections at

the preliminary hearing and in the trial court.  Both the preliminary hearing judge and the trial judge reviewed the tapes of petitioner's interrogation and concluded that petitioner had validly waived his Miranda rights.

When determining whether a waiver of Miranda rights has occurred, two conditions must be satisfied.  "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  Moran v Burbine, 475 US 412, 421 (1986).  "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived."  Id (citations omitted).

In United States v Labrada-Bustamante, the Ninth Circuit upheld the validity of a waiver of Miranda rights, even though the defendant in that case did not speak English and was a Mexican national unfamiliar with the United States justice system.  428 F3d 1252, 1259 (9th Cir 2005).  The defendant was advised of his rights in Spanish and stated nothing in response except that he understood his rights.  Id at 1257-58.  The interrogating agent made no threats or promises during the interview.  Id at 1258.  The Ninth Circuit held that the district court's finding that the defendant knew and understood his rights was not "clearly erroneous" in light of the totality of the circumstances.  Id at 1259.

\\

**9**

Here, in finding petitioner's waiver of <u>Miranda</u> rights valid, the trial court reviewed the videotape of petitioner's police interview and used the totality of the circumstances test. Ex 3 at 57-58; Doc # 13.  The court saw no indication of police deception, coercion, or intimidation.  Id.  "Each right was separately and clearly indicated to the defendant.  The defendant acknowledged he understood each right, no indication that there was any language barrier."  Id at 58.  The court also found no indication of any intellectual impairment or impairment due to drugs, alcohol or pain.  Id.  The court stated that "the defendant's willingness to answer questions was readily apparent" and that there was no lapse of time between the advisement and the beginning of questioning.  Id.  Based on all these findings, the court determined that, under the totality of circumstances approach, petitioner's waiver of his <u>Miranda</u> rights was effective and adequate.  Id.  As previously noted, this issue was not presented to the court of appeal on direct appeal.

The court's finding that petitioner validly waived his <u>Miranda</u> rights was not contrary to, and did not involve an unreasonable application of, clearly established Supreme Court precedent.  28 USC § 2254(d).  Nor did it involve an unreasonable determination of the facts.  Id.

3

Petitioner's final contention is that imposition of consecutive sentences violated his constitutional right to a jury trial.  Petitioner relies on <u>Blakely v Washington</u> in making this argument.  542 US 296 (2004).  This contention fails for two

reasons: (1) petitioner waived his right to a jury trial and the waiver encompassed the sentencing determination; and (2) even without the waiver, petitioner's argument would not prevail because the court of appeal's decision is in accord with a recent California Supreme Court decision and is not an "unreasonable application of clearly established federal law" within the meaning of § 2254(d).

Respondent cites <u>Wright v Craven</u> for the proposition that, "where a defendant waives a jury trial he is deemed to have consented to a trial of all the issues in the case before the court sitting without a jury."  412 F2d 915, 918-19 (9th Cir 1969).  In <u>Wright</u>, the defendant was convicted of selling heroin with two prior felony convictions.  Id at 916.  The Ninth Circuit held that by waiving the right to a jury trial as to the heroin charge, the defendant also "waived jury consideration of the prior convictions charged."  Id at 919.  Although there is little recent law and none directly on point, it was reasonable for the court of appeal to hold that when petitioner waived his right to a jury trial, he waived his right to a jury determination of all the issues in the case, including those that formed the basis of the trial court's sentencing decision.

Furthermore, petitioner's reliance on <u>Blakely</u> is misplaced.  In <u>Blakely</u>, the defendant pleaded guilty and, based on the facts admitted in his plea, faced a maximum sentence of fifty-three months.  Id at 298.  Under then-current Washington law, the judge could not have sentenced the defendant to a longer prison term without finding "substantial and compelling reasons" justifying such a departure.  Id at 299.  The judge sentenced the

11

defendant to ninety months based on his finding that the defendant had acted with "deliberate cruelty."  Id at 300.  The Supreme Court ruled that the sentence violated the Sixth Amendment because the judge had inflicted punishment that the jury's verdict alone did not allow.  Id at 304.  The Supreme Court also specifically stated, as relevant here, that Sixth Amendment concerns are not implicated where the judicial factfinding does not involve facts that "pertain to whether the defendant has a legal right to a lesser sentence."  Id at 309 (emphasis in original).  In petitioner's case, one of the factual findings made by the court in its guilt determination was also a basis for the imposition of consecutive sentences.  Under Blakely's dictum, the court of appeal's affirmance of petitioner's sentence is constitutionally permissible.

In rejecting petitioner's argument, the court of appeal stated that "the constitutional concerns expressed in Blakely are not applicable to consecutive sentencing" because "consecutive sentences may be imposed based solely upon the facts underlying the guilty verdict."  People v Swanson, slip op at 17; Doc # 13.  One of the trial court's bases for imposing consecutive sentences was that "each count reflects the same crime with the same victim on separate events."  Id at 15; Doc # 13.  Petitioner had admitted as much to the police.  Ex 2 at 43-46, 53-55; Doc # 13.  The court of appeal held that the trial court's additional finding of a breach of trust did not implicate Blakely because the judge had "already found, beyond a reasonable doubt, the facts necessary to sentence the defendant for the crimes with which he was charged."  People v Swanson, slip op at 18; Ex 13.  The appellate court also reasoned that the California discretionary sentencing law "does not create a

12

presumption favoring concurrent terms nor does it establish a 'statutory maximum' term for multiple felony convictions." Id. Rather, the statutory language "provides direction in those rare instances where a court fails to direct the manner in which multiple terms are to be served." Id.

The court of appeal's decision finds strong support in the California Supreme Court's recent decision in People v Black, 41 Cal 4th 799 (2007)("Black II"), holding that the Blakely line of cases does not apply to the imposition of consecutive terms under state law. In Black v California, 127 S Ct 1210 (2007), the Supreme Court granted certiorari and remanded Black back to the California Supreme Court for reconsideration in light of Cunningham v California, 127 S Ct 856 (2007). In Cunningham, the Supreme Court held that California's determinate sentencing law violated the defendant's right to a jury trial because it assigned to the trial judge, not the jury, authority to find by a preponderance of the evidence facts that subjected the defendant to an elevated upper term sentence. 127 S Ct at 860.

In Black II, announced post-remand from the United States Supreme Court, a jury had found the defendant guilty of three counts of sexual abuse and the judge sentenced the defendant to consecutive prison terms. 41 Cal 4th at 806-07. As an initial matter, the California Supreme Court stated that California does not have a presumption in favor of concurrent sentences. Id at 822. Instead, "the requirement that concurrent sentences be imposed if the court does not specify how the terms must run merely provides for a default in the event the court fails to exercise its discretion." Id. The court distinguished imposition of the upper

13

term from consecutive terms.  In imposing the former, "the court must set forth on the record facts and reasons, including the ultimate facts that the court deemed to be circumstances in aggravation."  Id (quotations and citations omitted).  In imposing the latter, the court needs to refer to "the primary factor or factors that support the decision," but "no factual findings are required."  Id (quotations and citations omitted).  The California Supreme Court held that "the determination whether two or more sentences should be served [consecutively] is a sentencing decision made by the judge after the jury has made the factual findings necessary to subject the defendant to the statutory maximum on each offense and does not implicate the defendant's right to a jury trial on facts that are the functional equivalent of elements of an offense."  Id at 823.

The court finds merit in the reasoning of <u>Black II</u> and in the court of appeal's decision in this matter, both of which concluded that Sixth Amendment concerns are not implicated by the imposition of consecutive sentences.  While the law in this area is not entirely settled at the federal level post-<u>Blakely</u>, the court of appeal's decision to uphold the consecutive sentences is not contrary to, and did not involve an unreasonable application of, clearly established federal law.  28 USC § 2254(d).  Nor was the court's decision based on an unreasonable determination of the facts.  Id.

\\
\\
\\
\\

III

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Judge